UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIMOTHY MICHAEL HAFERBECKER,

        Plaintiff,

  v.                                         Case No. 10-C-806

MICHAEL ASTRUE,

        Defendant.

## DECISION AND ORDER

In this action Plaintiff Timothy Haferbecker challenges the decision of the Commissioner of Social Security to deny disability benefits. On February 13, 2009, Plaintiff had a hearing before an administrative law judge ("ALJ") who ultimately found Plaintiff not disabled. Plaintiff appealed and the Appeals Council denied review. Plaintiff argues that his chronic pain and depression render him disabled. In support of his claim, Plaintiff has submitted new documentation from his treating psychiatrist. But Plaintiff's argument and documentation fail to demonstrate that the ALJ's denial of benefits was unreasonable. Accordingly, and for the reasons given below, the decision of the Commissioner will be affirmed.

**I. Background**

Plaintiff was forty-nine years old at the time of the hearing. (Transcript of Proceedings, "Tr.", Dkt. 15 at 23.) He was 73 inches tall and weighed 255 pounds. (Tr. 11.) He most recently worked full time in 2005 for Fabrication Express where he was responsible for cleaning metal

products that came off a fabrication line. In that position he regularly worked eight hours a day, standing the entire time. (Tr. 25-26.) Plaintiff held this position while he was incarcerated at a minimum security prison where, apparently, Plaintiff was eligible for work-release privileges. Prior to his imprisonment – on a conviction for drunk driving – Plaintiff held a number of other jobs. (Tr. 27.) He worked for Modern Plastics where he packaged product , cleaned, and performed quality control. (Tr. 27.) He also worked for Chuck's Radiator as a lead mechanic and, before that, he worked as a mechanic at Appleton Yellow Taxi. Both jobs required him to change positions frequently, to lift items as heavy as a tire, and to perform multi-step mechanical work. (Tr. 28-29.)

After Plaintiff was released from prison in 2005 he began looking for work. (Tr. 31.) While looking for full time employment he kept up with bills by doing odd jobs until at least 2008. (Tr. 359.) Both Wisconsin's Department of Vocational Rehabilitation and a temporary employment service assisted in Plaintiff's quest for a job. (Tr. 31.) Plaintiff testified that he applied for a number of jobs, included work as a grocery boy. (Tr. 45.) As of the date of the hearing Plaintiff had been unsuccessful in finding a full time position.

At the February 2009 hearing Plaintiff testified that he could not work because of back pain and exhaustion from lack of sleep. (Tr. 32.) He also testified that he had received medical treatment for carpal tunnel syndrome and fibromyalgia, and had some hearing loss on his left side. (Tr. 36-41.) Plaintiff testified that he was depressed because he could not find work but he was not taking any medications for his mood. (Tr. 48.) Despite these ailments Plaintiff explained that he was able to take care of his mother by doing her dishes, cooking, and taking out her garbage. (Tr. 50.) He was also able to go hunting. He testified that he had to use a crossbow instead of a regular bow.

2

If he shot a deer he had to rely on the help of a friend to drag the deer in from the field but he was able to gut and dress the carcass without assistance. (Tr. 42.)

This Court will briefly review Plaintiff's medical documentation – which is included in the transcript – that the ALJ had before him. X-rays of Plaintiff's back, taken in June 2006, revealed some spurring at C2-3, and to a lesser degree at C3-4, along with some degenerative spurring in the lower dorsal spine. (Tr. 260.) Otherwise the x-rays reveal no abnormalities. (*Id.*) In July 2006, Dr. Leonard, M.D. examined Plaintiff. Plaintiff complained of low back pain which he personally rated a severity of five out of ten. (Tr. 261.) At the time Plaintiff was not taking any pain medication. (Tr. 262.) Plaintiff told Dr. Leonard that he could walk for one mile, stand for forty-five minutes and sit for thirty minutes at a time, and lift thirty pounds. (Tr. 262.) Dr. Leonard noted that while Plaintiff had limited flexion (to forty-five degrees) in his dorsolumbar spine, Plaintiff's flexion was otherwise essentially normal. (Tr. 264.) Plaintiff also had normal grip strength and ability to do fine finger dexterity and his mobility was good. (Tr. 264-65.) Dr. Leonard also opined that Plaintiff's estimates of his ability to walk for one mile, stand for forty-five minutes at a time, and lift thirty pounds, were indeed reflective of Plaintiff's abilities. (Tr. 266.)

Later in July 2006, Mina Khorshidi, M.D. reviewed Plaintiff's medical records and opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, and could stand and/or walk for six hours and sit for six hours in an eight-hour day. (Tr. 267-77.) In November 2006, Zhen Lu, M.D. reviewed the medical records and affirmed Dr. Khorshidi's opinion. (Tr. 305.) In November 2006 Kathleen A. Clarke, Ph.D., examined Plaintiff. She opined that he could "understand, remember, and carry out 3-step instructions if the tasks are visually demonstrated" but she concluded that Plaintiff's chronic pain would interfere with his concentration, attention, and

3

pace. (Tr. 301.) Eric Edelman, Ph.D., later reviewed the evidence and opined that Plaintiff could understand, remember, and carry out one and two-step instructions; interact appropriately with supervisors and coworkers in an unskilled work setting; and maintain the attention and concentration needed to perform unskilled work. (Tr. 322, 325-26.) While Dr. Edelman opined that Plaintiff should limit public contact due to possible grooming issues (Tr. 326), Dr. Clark noted that Plaintiff "is polite and would respond appropriately with supervisors and co-workers." (Tr. 301.) In March 2008, Plaintiff started taking prednisone, neurontin, and Tylenol for pain, and Effexor for depression. (Tr. 343.) In October 2008, Plaintiff also started taking Percocet and Flexeril for pain

In light of the medical evidence of record and Plaintiff's testimony the ALJ concluded that "the claimant has not been under a disability within the meaning of the Social Security Act from April 22, 2005 through the date of this decision [July 1, 2009]. (Tr. 8.) The ALJ recognized that Plaintiff had several medically determinable impairments: degenerative spurring of the lumbosacral spine, obesity, decreased hearing in the left ear, a depressive disorder, an anxiety disorder, borderline intellectual functioning, dyslexia, drug and alcohol abuse in reported remission, carpel tunnel syndrome on the left side, and fibromyalgia. (Tr. 11.) The ALJ concluded that such medically determinable impairments, considered in combination, are severe. (*Id.*)

Ultimately the ALJ concluded that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in the Social Security regulations. (*Id.*) As for his Plaintiff's physical impairments, the ALJ noted that they did not cause an "inability to ambulate effectively" or an inability to "perform fine and gross movements effectively." (*Id.*) Regarding Plaintiff's mental impairments, the ALJ assessed both the "B" and "C" criteria for mental impairments but found that Plaintiff's impairments failed to meet either. The ALJ noted that Plaintiff was not taking

4

any medication for depression or anxiety, had only moderate restrictions in activities of daily living, only mild difficulties in social functioning, and only mild difficulties with concentration, persistence and pace. (Tr. 12.) He had no episodes of decompensation. (Tr. 13.) Because Plaintiff did not have at least two "marked" limitations (or at least one "marked" limitation combined with "repeated" episodes of decompensation) the ALJ concluded that the "B" criteria was not met. Likewise the ALJ concluded that the "C" criteria was not met because Plaintiff had no episodes of decompensation and did not require a highly supportive living arrangement. (Tr. 13.)

The ALJ also analyzed Plaintiff's residual functional capacity and found that Plaintiff could perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The ALJ credited the consultive psychologists who opined that Plaintiff could perform three-step instructions (Tr. 15) and noted that Plaintiff was leading a "relatively active lifestyle" in that Plaintiff was actively looking for work, could hunt with a crossbow and personally gut deers he shot, and was not being cared for by other family members. (Tr. 14.) In assessing Plaintiff's credibility the ALJ noted the contrast between Plaintiff's own representation of chronic conditions – dyslexia and fibromyalgia – and the fact that he had been engaged in substantial gainful work activity until at least 2004.

After assessing Plaintiff's residual functional capacity (RFC) the ALJ concluded that Plaintiff could preform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). A vocational expert testified that Plaintiff would be able to return to his past relevant work, and the ALJ accepted such testimony. (Tr. 17.)

**II. Analysis**

An ALJ's conclusion of no disability is reviewed with deference and will be upheld if it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue,* 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).

In reviewing the medical evidence of record and the Plaintiff's own testimony, this Court concludes that the ALJ's conclusion is supported by substantial evidence. Three medical sources examined Plaintiff and their opinions support the ALJ's findings on the severity of Plaintiff's limitations. The ALJ also appropriately noted the disconnect between what Plaintiff is able to do and Plaintiff's own testimony on the severity of his pain.

In support of his lawsuit seeking review of the Commissioner's determination of non-disability the Plaintiff submitted his original complaint and several letters to the Court. Plaintiff, who is not represented by an attorney, has not filed a formal brief in support of his appeal but he did submit a letter to the Court dated March 1, 2011 which the Court will treat as Plaintiff's brief in support of his complaint. (Dkt. 13.) In this letter/brief Plaintiff again alleges he is disabled and lists the pain medication he takes. But his letter does not provide any detail as to why he believes the ALJ's determination is not supported by the evidence of record. The Commissioner filed a brief on March 28, 2011. Since then three months have passed but Plaintiff has not filed a reply brief.

This Court will address certain additional evidence Plaintiff submitted on February 23, 2011. On that date Plaintiff provided this Court with a letter from his treating psychologist, Dr. Beld and related treatment notes. (Dkt. 12.) On its face the letter from Dr. Beld appears to support Plaintiff's claim of disability. Dr. Beld opines that Plaintiff "is in no way capable of even low-stress work,

based solely upon his psychiatric status." But upon closer examination Dr. Beld's letter does not undermine this Court's conclusion that the ALJ's determination of non-disability was supported by substantial evidence. There are several reasons for this. First is the fundamental fact that the ALJ never had an opportunity to review Dr. Beld's letter or treatment notes, indeed the letter was dated February 3, 2011 – some 18 months *after* the ALJ rendered his July 1, 2009 opinion. *See Eads v. Sec'y of HHS,* 983 F.2d 815, 817 (7th Cir. 1993) (noting that an ALJ "cannot be faulted for having failed to weigh evidence never presented to him.") Second, Dr. Beld did not first start treating Plaintiff until June 15, 2010, well after the ALJ had already made his decision. Thus the Dr. Beld's letter and treatment notes did not even address the time period at issue before the ALJ. *See Schmidt v. Barnhart,* 395 F.3d 737, 742 (7th Cir. 2005) (noting that "new evidence is material only if it is relevant to the claimant's condition during the relevant time period encompassed by the disability application under review.") It is unclear whether Dr. Beld reviewed the same medical records the ALJ reviewed, and it is unlikely that Dr. Beld's diagnosis of Plaintiff has any bearing on the same time period reviewed by the ALJ. Dr. Beld's letter vaguely notes that Plaintiff "has been severely ill since before our first visit in June of 2010" which provides little guidance on Plaintiff's condition during the relevant period of time. Third, Dr. Beld states that he only treats Plaintiff's mental conditions – not his pain – but Dr. Beld proceeds to offer an opinion on the effects of Plaintiff's pain on his ability to work. Fourth, Plaintiff told Dr. Beld that he has been looking for work for four years, had resumed drinking despite having received thirteen DUIs, and had smoked marijuana – behaviors that seem to confirm the ALJ's own credibility conclusions. Finally, it is unclear to what extent, if at all, Plaintiff's decision obtain treatment from Dr. Beld could have been motivated by Plaintiff's difficulty in obtaining Social Security benefits. Dr. Beld's treatment notes do indicate

7

that Plaintiff "expressed frustration that he has not been granted Social Security benefits" and by the time Plaintiff first visited Dr. Beld Plaintiff would have had an opportunity to review the ALJ's written determination that Plaintiff did not have a disability cognizable under Social Security Regulations.

Ultimately, as noted above, this Court cannot conclude that the ALJ ignored or disregarded Dr. Beld's letter – indeed, the ALJ never had an opportunity to review the letter. Accordingly, this Court will neither fault the ALJ for not considering Dr. Beld's letter nor reverse the Commissioner's decision on that basis.

Setting aside Dr. Beld's letter, I turn to the medical opinions that were actually before the ALJ for consideration. In reviewing them I conclude that the ALJ reasonably relied on said opinions. The ALJ accepted Dr. Clarke's opinion that the Plaintiff could perform three-step instructions because Dr. Clarke personally examined Plaintiff. Dr. Edelman, in contrast, did not examine Plaintiff before opining that Plaintiff could only perform two-step instructions. *See* 20 C.F.R. § 404.1527(d)(1) (Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.). In concluding that the Plaintiff could perform light work, the ALJ relied on the opinions of Drs. Khorshidi and Lu who opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently, and could stand and/or walk for six hours and sit for six hours in an eight our day. Such limitations seem even more conservative than Plaintiff's own assessment of his abilities. Recall that in 2006 Plaintiff told Dr. Leonard that he could walk for one mile and lift thirty pounds. (Tr. 262.) Further recall that as recently as 2005 Plaintiff had been working at Fabrication Express in a position where he was required to stand a full eight hours a day. And the ALJ's limitations are consistent with Plaintiff's

own description of hunting deer – a pursuit which involves walking, sitting, and some degree of strength to dress the animal's carcass.

The ALJ's credibility determination is cemented by the readily apparent disconnect between Plaintiff's March 1, 2011 letter to this Court in which he contends that his pain prevents him from doing "any type of . . . recreational activities" (Dkt. 13) and Plaintiff's testimony regarding his ability to go hunting, which certainly qualifies as a recreational activity. In assessing credibility the ALJ also reasonably noted the dichotomy between Plaintiff's self-professed pain level and the fact that his mother stated he "continues to be able to perform house and car maintenance, do laundry, and prepare meals." (Tr. 12, 14.) Finally, Plaintiff's testimony that chronic impairments such dyslexia and fibromyalgia limited his ability to work is directly undermined by the fact that Plaintiff *did* work until at least 2004. Thus, even assuming his impairments were chronic, they plainly did not prevent him from working. The ALJ reasonably noted these specific examples to support his conclusion that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible.

**III. Conclusion**

Substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled within the meaning of the Act as of the date of the hearing. Even Plaintiff's own testimony supports the conclusion that he could do light work; indeed, he testified that he would "probably" be able to work the same job he held with Fabrication Express if the job was again offered to him – a job that required standing eight hours a day. (Tr. 45.) The ALJ's conclusion is also supported by medical opinions and the objective medical evidence. The ALJ cannot be faulted for failing to consider Dr.

Beld's letter, as that letter was never before the ALJ. For all of these reasons the decision of the Commissioner is **AFFIRMED**.

**SO ORDERED** this   5th   day of July, 2011.

                                                s/ William C. Griesbach
                                                William C. Griesbach
                                                United States District Judge